### William Grace Company v. Christina Larson, Administratrix.

#### Gen. No. 12,795.

1. SAFE PLACE TO WORK—*duty of master to furnish.* Where a servant by virtue of his employment is required to work upon a particular slab, it is the master's duty to see to it that such slab is reasonably safe.

2. EVIDENCE—*effect of destruction of.* All reasonable presumptions will be indulged against a party who has destroyed evidence pertinent to the issue.

3. STATUTORY DAMAGES—*when affirmance will not be accompanied by allowance of.* Held, that this case does not come within the statute or the ruling in Potter v. Levison, 199 Ill. 95.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed October 29, 1906.

**Statement by the Court.** Appellee's intestate at the time of the unfortunate occurrence which resulted in his death was employed by appellant, who was engaged in the construction of the Rock Island station, as a laborer. On the day of the accident, February 11, 1903, the deceased was engaged with two other workmen in putting on a part of the roof of the train-shed portion of the structure. The material used consisted of slabs of concrete, which were laid upon an iron framework and bolted to it. The slabs were five feet long, two feet wide and two and three-fourths inches thick, reinforced by what is termed "expanded metal"

embedded in the slab. All the slabs were of the same size with the exception of those used in that part of the roof where there were irregular-shaped windows called "dormer windows," where the slabs were trimmed by chipping until they conformed and fit into such irregular-shaped or "dormer windows." These slabs were made of an admixture of sand, cement, cinders and concrete in varying portions. When first made the slabs were soft. They were retained in molds for thirty-six hours, and were subjected to a drying process in a heated room constructed for that purpose, in which 600 slabs could be dried at one time. Slabs remained in the drying room from thirty-six hours to eight days, the date when each slab was made being marked on it when soft. The strength of the slab increases with age up to forty-eight hours, after which time some evidence tends to show it does not perceptibly change. The slab which was the cause of precipitating Larson to his death was not subjected to any test as to its strength. These slabs were manufactured by appellant for the uses to which they were put. The date on the slab which broke and caused the accident does not appear from the evidence. The method adopted in putting in place these slabs was about as follows: They were delivered to the men, who placed them on the roof and fastened them by tying a rope around the slab about the middle, hoisting them to the top or highest point of the roof, where they would be put on a wheelbarrow and taken to a point directly above the three men, who were there to put the slabs in place, and there transferred to a sled or skid, which would slide down the side of the roof of its own weight, its movement being controlled by a rope attached to its rear and handled by the three men standing on the roof, and thus put in place. Just prior to the accident the slab had been put in place and Larson was lying on the slab—a necessary position for him to assume—and he was reaching under it in an attempt to put a bolt up through the hole in the slab in order

to attach the slab to its iron support. At this juncture the slab broke and fell through between the iron rafters which supported it at either end, and Larson having lost his support fell to the ground, receiving injuries which resulted in his death.

The cause went to the jury on the second count of the declaration, which charged that appellant "negligently furnished said slab of such imperfect construction and of such insufficient strength that it would not sustain the bodies of the servants of the defendant." The verdict of the jury upon which the judgment appealed from was rendered is $3,500, and while twenty-three errors are assigned upon this record, but two propositions are argued to this court in appellant's brief. One is that the evidence does not establish the charge in the second count of the declaration as to negligence in furnishing an imperfectly constructed slab of insufficient strength to sustain the weight of the bodies of the men engaged in an attempt to put such slab in place; and the other, error in admitting the testimony of the witness Williams in rebuttal. No point is made or argued challenging the correctness of the law given in the instructions by the trial court to the jury.

JAMES M. SHEEAN, F. J. CANTY and J. C. M. CLOW, for appellant.

CHARLES R. WHITMAN, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

We will proceed to decide this appeal upon the theory resting in the claim made on page 5 of appellant's brief, that "the only question is, was the defendant negligent in furnishing a weak slab, so that it broke under the weight of the deceased."

The fundamental principle that a master must furnish a reasonably safe place for his servant to work,

lies at the base of this case in determining the right to maintain this judgment. The slab in question was the place where the deceased must work in order to do that which at that particular time was incumbent upon him to do in virtue of his employment. It was to the same extent a necessary place on which he must work as scaffolding is ordinarily erected for, and by analogy the same duties rested upon the master as to the security of that particular slab as a reasonably safe place in which the servant may do the work of his master as attaches to the duties of the master who provides a scaffold upon which his servant must work, and the rule of law in such cases will govern here. In McBeath v. Rawle, 192 Ill. 626, affirming this court, 93 Ill. App. 212, the Supreme Court said that the deceased was not estopped from saying to his employers, "As between you as master and myself as employe the law imposes upon you the duty of providing me with a sufficient scaffold, and although another party may have constructed it in pursuance of a duty which it owed you, still it was your duty to me to see that it was securely and safely built." This is apt language as applied to the deceased and appellant and the broken slab which caused the death of Larson. Larson had nothing to do with the making of these slabs; they were handed to him to be placed in the iron work to form a roof upon the train-shed; they were made by other employes of appellant.

There are several incidents which point suspiciously to a lack of care in furnishing Larson with a slab sufficient to support him. It is in proof that the day before the accident no work was done in roofing the shed, because there were no slabs in condition to be used safely. It is admitted that time was needed, after the slabs were made and set in the molds, in which to dry and harden sufficiently to be safely used. The date of making the slab in question, usually marked upon the slabs when soft, has not been shown. As to how recently it had been in the drying room or when it was

made is left to conjecture and surmise. That which could have been made known to a certainty by evidence peculiarly within the control of appellant is left in doubt. That some question was made as to the strenght of this particular slab is evident, from the conversation which occurred at the time between Coster and the foreman Copps, when Copps said, "They will do. Be careful with them, but put them on." Why did Copps think 'care was needed? It may have been because of his knowledge that the slabs then being used were not sufficiently seasoned to make them of the strength needed. Such must have been the condition the previous day, when work was suspended because slabs were not in condition to be used with safety. Is not this more than likely from the action of suspension of the work and the testimony of Carter that "in the beginning the slabs were pretty good and hard, and as we were getting along they commenced to get softer and softer all the time." (R. p. 140.) The proof is uncontradicted that the slab broke and precipitated Larson to his death when no one but himself was upon it, when usually three men worked upon it part of the time while putting it in place. The fact of the slab breaking while Larson was upon it is not conclusive evidence of its weakness; yet it is, in the light of all the other evidential facts, essentially corroborative. The destruction of the slab after examination by Donaldson succeeding the accident with, as he testifies, the evidence of the date of its manufacture upon it, cannot be excused upon any reasonable hypothesis other than it was intentionally destroyed to conceal facts which might have been favorable to a recovery. The evidence disclosed by this slab was material and should have been preserved. All reasonable presumptions must be indulged against the one who destroys evidence pertinent to the issue. U. S. Brewing Co. v. Ruddy, 203 Ill. 306. The testimony of Donaldson and Mills as to the condition of the slab after the accident, in view of their destruc-

P., C., C. & St. L. Ry. Co. v. Puszdrakiewicz.

tion of it, is of little, if any, weight, and the jury were justified—if they did so—in disregarding it altogether.

The admission of the testimony of Williams in rebuttal of the testimony of Nevins that a slab made as the one in question was would be "hard in twelve hours," was not contrary to the rules of evidence, but if it were, it becomes unimportant when it is seen that the action of the court in withdrawing from the consideration of the jury by a peremptory instruction the whole question of the negligent or imperfect manufacture of the slab, thus in effect eliminating Williams' testimony from the record.

We are unable to concur in the claim of appellee that statutory damages should be awarded on affirmance. This case neither upon principle of law nor fact comes within the statute or the ruling of the court in Potter v. Leviton, 199 Ill. 95.

There is no reversible error in this record, and the judgment of the Superior Court is therefore affirmed.

*Affirmed.*